**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**CECILIA CULVER**

*Plaintiff,*

v.

**ERNST & YOUNG LLP, *et al.***

*Defendants.*

</td><td>

Case No. 1:26-cv-1290-CKK

</td></tr>
</table>

**<u>DECLARATION OF CECILIA CULVER</u>**

I, Cecilia Culver, declare the following:

1.      I am the plaintiff in this action. I am over eighteen years of age. I make this declaration from my own personal knowledge, and I could and would testify competently to the matters stated here.

**I.      EMPLOYMENT AND WORK LOCATION**

2.      On October 23, 2023, I received and signed a letter from Ernst & Young U.S. LLP offering me an internship position. A true and correct copy of that letter, as I received and signed it, is attached as Exhibit 1.

3.      My internship began on June 10, 2024 and ended on August 2, 2024. I performed that work at the EY office at 1101 New York Avenue NW in Washington, D.C.

4.      On or about August 22, 2024, I received a letter from Ernst & Young U.S. LLP offering me a full-time position. I signed it on August 23, 2024. A true and correct copy of that letter, as I received and signed it, is attached as Exhibit 2.

5.      My full-time employment began on January 13, 2025.

6.      My assigned office was 1101 New York Avenue NW, Washington, D.C.

7. From January 13, 2025 until May 18, 2025, my assignment was to that office on a hybrid schedule, and I worked there in person two to three days in a typical week. I had a building badge for that office.

8. I did not have a desk assigned to me at that office. EY's practice was that employees were to reserve desks, but in my experience no one did. The QUEST practice occupied an area on one floor of the office, which I recall as the fifth floor, and that area was used only by QUEST personnel. When I worked in the office, I chose an unoccupied desk in that area.

9. Some senior QUEST personnel used individual offices in that office. I do not know whether those offices were formally assigned to them.

10. During that period I lived in Washington, D.C., under a lease for a residence in Washington, D.C.

11. I was paid on a District of Columbia payroll and I paid District of Columbia income tax on my EY earnings. My mailing address on file with EY was in Washington, D.C.

12. Weeks before May 17, 2025, I received written performance feedback from my senior manager through EY's LEAD system. A true and correct copy of that feedback, as I received it, is attached as Exhibit 3.

13. At no time before May 17, 2025 was I placed on a performance improvement plan, given any disciplinary warning, or told that I had violated any EY policy.

## II. WHAT I SAW WHEN I SIGNED THE OFFER LETTERS

14. I signed each of the letters attached as Exhibits 1 and 2 on my own personal laptop computer. On each occasion I was checking my personal email account, I saw a message containing a DocuSign link, and I clicked that link. Clicking it opened a DocuSign session in my web browser.

15. In that browser session, what appeared on my screen was a single letter, which I scrolled through from beginning to end.

16. No separate document was attached to that letter. Nothing else was presented to me alongside it to open, scroll through, or sign.

17. At the bottom of the last page of that letter there was a list of items with hyperlinks. They appeared to me as small print of the kind I associated with a form letter. I did not read them and did not take note of them at the time.

18. I do not recall clicking on any of those links at the time I signed the letter. Because I did not click them then, I do not know what they resolved to on that date or whether they functioned.

19. No text of any document titled EY Common Ground Dispute Resolution Program was displayed on my screen during that session.

20. In each of the letters attached as Exhibits 1 and 2, the last page contains a list of enclosures. One item in that list is labeled Common Ground Dispute Resolution Program. In each letter, that item is a live hyperlink.

21. In each letter, that hyperlink points to the same web address: http://www.ey.com/us/common-ground.

22. The DocuSign links by which I received and signed the letters attached as Exhibits 1 and 2 are no longer active. I cannot return to either DocuSign session to see what was presented to me on October 23, 2023 or on August 23, 2024.

23. On August 23, 2024, the day I signed the letter attached as Exhibit 2, I did not have EY network credentials. My internship had ended on August 2, 2024, and my full-time employment did not begin until January 13, 2025.

24. On October 23, 2023, the day I signed the letter attached as Exhibit 1, I did not have EY network credentials. My internship did not begin until June 10, 2024.

25. My experience signing the letter attached as Exhibit 1, in October 2023, was the same in each of the respects described in paragraphs 14 through 19.

## III. EVERY OCCASION I WAS GIVEN OR DIRECTED TO PROGRAM MATERIALS

26. Before May 30, 2025, no one at EY sent me, handed me, or gave me a copy of any document titled EY Common Ground Dispute Resolution Program, in paper or electronic form.

27. I attended EY orientation after my full-time employment began. I do not recall any part of orientation addressing dispute resolution, mediation, or arbitration.

28. I did not sign any acknowledgment or affirmation at or after orientation other than the two offer letters attached as Exhibits 1 and 2.

29. The onboarding materials I was told about were available on EY's internal network after orientation. The only onboarding document I was given and kept in my own possession was my offer letter.

30. I have no recollection of receiving or opening any email or notice from EY dated on or about March 4, 2025 concerning updates to a dispute resolution program. I no longer have access to any EY email account and I am unable to check.

31. I have no memory of clicking any link in any such communication. I did not obtain or save any document titled EY Common Ground Dispute Resolution Program as a result of any communication from EY dated on or about March 4, 2025.

32. Before this litigation, I had never seen or heard of a 2022 or 2025 version of any EY dispute resolution program.

### IV.   MAY 18 THROUGH MAY 22, 2025

33.   On the morning of Sunday, May 18, 2025, I tried to log into Microsoft Teams to check a message. My password did not work.

34.   Around 11:00 a.m. that morning I telephoned the EY help desk. The person I spoke with told me they were not sure what was happening and that they would escalate my ticket. I do not have any record of that call or of the ticket. Any confirmation of the ticket would have been sent to my EY email address, which I could not access then and cannot access now.

35.   I also tried to open my EY email that morning and could not.

36.   I was not able to reach EY's internal network at any point after that morning.

37.   During the week that followed, and before my employment ended, I intended to look on EY's internal network for internal policies. I was unable to do so because I could not get access.

38.   The only place I was ever told EY's policy and onboarding materials could be found was EY's internal network. After the morning of May 18, 2025, I could not reach EY's internal network. I could not have located, opened, or read any version of the Program posted there at any time after that morning.

39.   At approximately 1:59 p.m. on May 18, 2025, I received an email from Jason Morrissey. A true and correct copy of that email, as I received it, is attached as Exhibit 4.

40.   At approximately 2:01 p.m. that same day, I received a text message from a telephone number identified in the message as belonging to Jason Morrissey, with an attachment. The PDF attachment was the email he sent the same day notifying me I was being put on administrative leave. A true and correct copy of a screenshot of that message, taken from my phone, is attached as Exhibit 5.

41.     I was in Washington, D.C. when I received the email attached as Exhibit 4 and the text message attached as Exhibit 5.

42.     On May 19, 2025, I sent an email to Mr. Morrissey, copying Andrew Phillips, in which I asked for a meeting time, the format of the meeting, the identity of anyone else who would attend, the topics to be discussed, the questions they had for me, and copies of any EY policies or guidelines they believed I had violated. A true and correct copy of that email, together with Mr. Morrissey's earlier reply of the same day, is attached as Exhibit 6.

43.     On May 21, 2025, I sent a further email to Mr. Morrissey, copying Mr. Phillips, asking them to confirm receipt of my previous email. A true and correct copy is attached as Exhibit 7.

44.     Before May 22, 2025, I did not receive an answer to any of the questions I asked in the email attached as Exhibit 6. No one identified any EY policy or guideline to me, and no one sent me a copy of any policy or guideline.

45.     On May 22, 2025, I exchanged emails with Anthony Jordan. A true and correct copy of that exchange, as I sent and received it, is attached as Exhibit 8.

46.     I was in Washington, D.C. during each of the exchanges described in paragraphs 42 through 45.

47.     No one at EY told me that a dispute resolution program was the only way for me to make a complaint. I have no memory of anyone telling me anything about how to make an internal complaint.

48.     I learned that EY had a dispute resolution program from reading my own offer letter and from my own internet research after I was placed on leave.

49.     While I was on leave, I obtained a copy of a document titled EY Common Ground Dispute Resolution Program bearing an issue date of March 1, 2020. A true and correct copy of the document I obtained and saved is attached as Exhibit 9.

50.     I do not now recall whether I obtained the document attached as Exhibit 9 by following a link in my offer letter or by searching the internet. Exhibit 9 is the only such document I obtained and saved during that period.

51.     I did not know at that time that any other version of that document existed.

## V.    THE MAY 22, 2025 NOTICE

52.     After I was placed on administrative leave and locked out of EY's systems, I re-read the letter attached as Exhibit 2, looking for information about what options or processes were available to me.

53.     Every version of the Program I obtained or saw before this litigation was the version bearing an issue date of March 1, 2020, attached as Exhibit 9. I did not obtain, see, or possess any 2022 or 2025 version.

54.     Exhibit 9 is the document I read and relied on when I decided what to do. It is the version whose SCORE number I identified in my May 22, 2025 notice, and the section numbers I cited in that notice are the section numbers that appear in Exhibit 9.

55.     I was looking for the document that told me what options were available to me, and I used the document I found. If the link in my offer letter had returned a different version of the Program during that period, I would have obtained and used that version instead.

56.     On August 7, 2026, I visited the web address identified in paragraph 21, http://www.ey.com/us/common-ground. When I did so, my browser was redirected automatically to a document at the address https://cs.ey.com/2025/04/10944/ey-common-ground-dispute-resolution-program.pdf.

57.     The document that loaded at that address is the 2025 version of the EY Common Ground Dispute Resolution Program. It bears SCORE Number 25747-251US and an issue date of February 20, 2025. It is not the document attached as Exhibit 9.

58.     The 2025 version of the Program bears an issue date of February 20, 2025. It therefore did not exist on October 23, 2023 or on August 23, 2024.

59.     When I sent the email and letter attached as Exhibit 10, I had not been told that my employment was ending.

60.     I understood that I was starting a mediation. I selected JAMS. I asked for four categories of documents. I proposed a mediation date of June 18 by Zoom. I asked Ms. Stempel to confirm receipt by May 25 and to provide the documents by May 30.

61.     I expected that a mediation would begin, that the dispute would be resolved through it, and that I would be returned to active status.

62.     I was in Washington, D.C. when I sent the email and letter attached as Exhibit 10.

## VI.    WHAT I RECEIVED AFTER MAY 22, 2025, AND WHAT I DID NOT

63.     Later on May 22, 2025, I received an email from Mr. Morrissey. A true and correct copy of a screenshot of that email, taken from my screen, is attached as Exhibit 11.

64.     The message attached as Exhibit 11 displayed a notice stating that recipients could not forward, print, or copy the content.

65.     I was in Washington, D.C. when I received the message attached as Exhibit 11.

66.     On May 23, 2025, I received an email from Regina Oberg concerning steps to complete in connection with my separation. A true and correct copy is attached as Exhibit 12.

67. On May 25, 2025, I received an email from Ms. Stempel. A true and correct copy is attached as Exhibit 13.

68. I have never received any communication of any kind from JAMS.

69. No one at EY ever proposed a mediator to me, by name or otherwise.

70. No one at EY ever sent me a representation letter or any similar form for a mediator to sign.

71. No one ever told me what any fee would be, and no one ever asked me to pay any fee, in connection with a mediation.

72. No one ever asked me to agree to extend any deadline in connection with a mediation, and I never agreed to extend any deadline.

73. I received nothing further from anyone at EY about a mediation after May 25, 2025 until January 2026.

74. No mediation was ever held.

## VII. THE EEOC PROCESS

75. I authorized my counsel to file a charge of discrimination with the Equal Employment Opportunity Commission on my behalf.

76. I authorized my counsel to request mediation in connection with that charge.

77. A true and correct copy of the attorney electronic filing record for my charge, which I have reviewed, is attached as Exhibit 14.

78. I lived in Washington, D.C. throughout my employment with EY, under a lease for a residence in Washington, D.C.

79. I never received any invitation to mediate from the EEOC.

80. I never received any agreement to mediate, or any form of any kind concerning mediation, from the EEOC.

81.    Between November 18, 2025 and January 2, 2026, I received no communication of any kind from the EEOC.

82.    No one from the EEOC ever told me whether mediation had been offered to EY, or whether EY had responded.

83.    On or about January 2, 2026, a letter concerning my charge was sent to my counsel. A true and correct copy, which I have reviewed, is attached as Exhibit 15.

84.    I have an account on the EEOC public portal. When I logged into that account, the portal displayed a message stating that the file for my charge is no longer available and directing me to submit a request to obtain copies. A true and correct copy of a screenshot of that message, taken from my screen on August 7, 2026, is attached as Exhibit 16.

## VIII. WHAT I OBSERVED CONNECTING INDIVIDUAL DEFENDANTS TO WASHINGTON, D.C.

85.    I worked in EY's Quantitative Economics and Statistics practice, which is referred to internally as QUEST.

86.    The QUEST colleagues I worked with on my projects sat in the EY office at 1101 New York Avenue NW in Washington, D.C.

87.    Andrew Phillips and Robert Carroll were the leaders of the QUEST practice during my employment.

88.    In January or early February 2025, the QUEST practice held a retreat in Washington, D.C. I attended. Mr. Phillips attended and Mr. Carroll attended. I saw both of them there in person.

89.    During my employment, Mr. Phillips was present in the Washington, D.C. office approximately every other week. I saw him there in person.

90.    During my employment, Mr. Carroll was present in the Washington, D.C. office at least once a week, as best I recall. I saw him there in person.

91.    There were many in-person meetings at the Washington, D.C. office during my employment, including a weekly team meeting, at which both Mr. Phillips and Mr. Carroll were often physically present. I attended those meetings and saw them there.

92.    I never met Mr. Morrissey, Ms. Stempel, or Mr. Jordan in person. My communications with each of them were by email, and I was in Washington, D.C. when I sent and received those communications.

93.    I have no knowledge of whether Mr. Morrissey, Ms. Stempel, or Mr. Jordan traveled to Washington, D.C. during my employment. I never had access to EY's travel records, calendars, badge records, or expense records, and I do not have access to them now.

94.    During my employment, the QUEST practice had approximately sixty members. Based on the colleagues I worked with and saw in person at the Washington, D.C. office, at least half of the practice was based in that office. This is my own estimate, based on my own observation.

95.    The letter attached as Exhibit 1 was signed on behalf of EY by Robert Carroll.

96.    Jason Morrissey was the person at EY who communicated with me about my administrative leave and my separation, as reflected in Exhibits 4, 5, and 11.

97.    I received every communication described in this declaration from Mr. Morrissey, Mr. Phillips, Ms. Stempel, and Mr. Jordan while I was in Washington, D.C.

## IX.    DOCUMENTS I AUTHENTICATE

98.    Each document attached as an exhibit to this declaration is a true and correct copy of the document as I received it, sent it, signed it, obtained it, or saw it on my screen, as described in the paragraph identifying it.

99.     I do not have in my possession any other EY document concerning my employment, my administrative leave, or my separation. The only document from my onboarding that is in my possession are my offer letters.

100.     I do not have and never had copies of the following categories of records: EY's records of whether the March 4, 2025 announcement was delivered to me, opened by me, or clicked by me; EY's records of what the web address in my offer letters returned in 2023, 2024, or May 2025; my building badge or swipe records for the 1101 New York Avenue NW office; my internal timesheets; calendar invitations for QUEST meetings; and any record of who decided to place me on administrative leave or to end my employment. All of those records are in EY's possession.

101.     I no longer have access to any EY email account, any EY computer, or EY's internal network.

I declare or certify, verify, or state under penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2026, in Washington, D.C.

*Cecilia Culver*
ID 1AHrnbwGqUigXXq9A6Z2EJT7

Cecilia Culver

**EXHIBIT LIST**

| Ex. | Description |
|---|---|
| 1 | Offer letter for internship position, Ernst & Young U.S. LLP to Cecilia Culver, dated October 23, 2023, signed October 23, 2023 |
| 2 | Offer letter for full-time position, Ernst & Young U.S. LLP to Cecilia Culver, dated August 23, 2024, signed August 23, 2024 |
| 3 | FY25 LEAD written performance feedback |
| 4 | Email, Morrissey to Culver, May 18, 2025, subject Administrative Leave Notification |
| 5 | Screenshot of text message received May 18, 2025 with PDF attachment |
| 6 | Email, Culver to Morrissey and Phillips, May 19, 2025, with Morrissey reply of same date |
| 7 | Email, Culver to Morrissey and Phillips, May 21, 2025 |
| 8 | Email exchange, Culver and Jordan, May 22, 2025 |
| 9 | EY Common Ground Dispute Resolution Program, SCORE 08363-201US, issue date March 1, 2020, as obtained and saved by Ms. Culver |
| 10 | Email and attached letter, Culver to Stempel, May 22, 2025 |
| 11 | Screenshot of email, Morrissey to Culver, subject Separation Notification |
| 12 | Email, Oberg to Culver, May 23, 2025, concerning separation steps |
| 13 | Email, Stempel to Culver, May 25, 2025 |
| 14 | EEOC attorney electronic filing record, Charge No. 570-2026-00478 |
| 15 | Letter, EEOC Washington Field Office to counsel, January 2, 2026 |
| 16 | Screenshot of EEOC public portal message from Ms. Culver's own account |

# Ex. 1

DocuSign Envelope ID: F22F86A0-0489-40B0-9CA1-7BE5C1F656C4



**EY**
Building a better
working world

October 23, 2023

Dear Cecilia:

Congratulations! On behalf of Ernst & Young U.S. LLP ("EY" or the "Firm"), we are excited to have you join us.

Your bold ambition is just the beginning. Here, you'll learn from the best, surround yourself with the curious, ask better questions to seek better answers and build a better working world. You'll harness our global scale, our technology, our teams and our culture to realize your potential. In the information that follows, you will find the necessary details about your start date, orientation, and benefits, as well as firm policies, and if applicable, certification requirements.

| | |
|---|---|
| **Title** | USA - NTD - Washington - Tax - QUEST - Intern - Summer 2024 |
| **Service Line** | TAX |
| **Sub-Service Line** | Other Tax |
| **Practice** | Quantitative Economics and Statistics (QUEST) within EY's National Tax Department |
| **Rank** | Intern (CS) |
| **Location** | Washington - 1101 New York Ave |
| **Compensation** | $36.06 Hourly |
| **Start Date** | Summer 2024 |
| **Decision Date** | November 6, 2023 |

**Compensation**

Upon joining EY, your compensation as noted above will be payable bi-weekly. Overtime will be paid for hours worked in excess of 40 hours per week at the premium overtime rate of one and one-half times your regular hourly rate. For those states where overtime laws differ from the federal laws, overtime will be paid in accordance with those laws. Due to the temporary nature of your employment, you will not be eligible for most benefits, which includes but is not limited to holiday pay, vacation, health and dental coverage, and severance pay. You will be required to follow EY's travel guidelines and expense policy and will be reimbursed for eligible business-related travel expenses; however, you will not be compensated for your travel to and from the Washington - 1101 New York Ave office.

DocuSign Envelope ID: F22F86A0-0489-40B0-9CA1-7BE5C1F656C4

**Bonus**

We are also prepared to offer you a onetime bonus in the amount of $2,000.00 from which applicable payroll tax deductions will be made, payable within the first few pay cycles of your employment.

*Bonus Recovery Agreement (Terms & Conditions)*

You acknowledge that EY has agreed to provide you with a bonus or bonuses from which applicable payroll tax deductions will be made. You understand that your skill and experience is valuable to EY  and its clients and that your failure to fulfill the terms set forth below would be harmful to EY 's business. You acknowledge and agree that EY may assign any of its rights and obligations under this Agreement, and any other agreement between EY and you relating to the terms and conditions of your employment, in whole or in part, to (i) any other EY Firm, (ii) any affiliate of EY, and/or (iii) any entity resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part.

In the event you terminate your internship with EY, or EY terminates your internship for cause (cause shall include, but is not limited to: acts of dishonesty; violations of firm policy; violations of applicable laws, rules, or regulations regarding professional demeanor or ethics; or acts of insubordination), the entire amount(s) set forth above shall be immediately due and owing to EY, without demand for payment. In the event that EY terminates your internship for any reason other than cause, you shall not be obligated to repay the amount(s) set forth above. At the conclusion of your internship, your obligation to remain in the employ of EY pursuant to this agreement shall be extinguished. However, this paragraph shall not affect, diminish, delimit or otherwise waive any other contractual obligations you may owe to EY. Should EY demand payment from you based on any of the above terms and/or conditions, you agree to make such payment within thirty (30) days. In the event that you do not provide payment to such demand from EY, you understand that EY may commence suit to enforce this agreement. You agree to waive your right to a jury trial in any action brought by EY to enforce this agreement, or any action brought by you to challenge this agreement. Any costs associated with the repayment of the above referenced amount(s), such as attorneys' fees and court costs, shall be paid by you. In the event you do not repay this amount(s) in a timely manner, interest shall accrue at the at the prime interest rate on the date of EY's demand for payment. The acceptance by EY of any partial payments or the failure of EY to exercise any right hereunder, shall not modify this agreement or waive any of your obligations or the rights of EY as set forth in this agreement. You specifically authorize EY to deduct from any wages or other payments due to you upon your separation from EY or all or any portion of the amounts owed by you to EY under this agreement, in accordance with applicable law. EY's exercise of its rights under this subsection to obtain partial repayment of any amounts owed by you to EY shall not constitute an accord and satisfaction, and is without prejudice or waiver to its right to full payment of the sum due to EY. This agreement shall be governed and construed in accordance with the laws of the state of Delaware.

**Terms of Offer and Employment**

Your employment relationship with EY is "at-will." This means that either you or EY may terminate the relationship at any time for any reason with or without notice or cause, unless stated otherwise in an employment agreement signed by an authorized person. Nothing contained in any policies or rules, or any representation of the contrary, will alter that relationship unless in writing signed by an authorized person. This offer is contingent upon your agreement that any dispute, controversy or claim (as defined in the EY Common Ground Dispute Resolution Program) arising between you and EY will be submitted first to mediation and, if mediation is unsuccessful, then to binding arbitration in accordance with the terms and conditions set forth in 08363-201US, which describes EY's Common Ground Dispute Resolution Program. By signing this offer, you acknowledge that you have read and understand the EY Common Ground Dispute Resolution Program (08363-201US) and that you shall abide by it. YOU ACKNOWLEDGE THAT YOU HAVE AGREED TO WAIVE ANY RIGHT YOU MAY HAVE TO HAVE A DISPUTE BETWEEN YOURSELF AND EY DETERMINED BY A JURY OR COURT OF LAW AND THAT ALL SUCH DISPUTES SHALL BE RESOLVED THROUGH MEDIATION AND ARBITRATION. A link to the Common Ground Dispute Resolution Program is included for your review.

Our offer is subject to the terms and conditions set forth in the application you completed for employment at EY and upon your continued maintenance of a strong academic record, including, without limitation, in course work that EY deems relevant to the position for which you are receiving an offer. EY may withdraw your offer of employment or terminate your internship if it determines in its discretion that these conditions have not been met. As such, you will be expected to send an unofficial copy of your most recent transcript prior to your internship start date.  Additionally, an unofficial transcript following a semester/quarter may be requested. This offer is contingent upon the completion of a criminal background investigation.

**In addition, you are expected to notify EY if you have been, are, or become the subject of a conduct investigation while attending your college/university.**

You must complete a Public Company Accounting Oversight Board (PCAOB) Consent Form. A link to the PCAOB Consent

DocuSign Envelope ID: F22F86A0-0489-40B0-9CA1-7BE5C1F656C4

Form is included for your review, which you will be required to sign during the hiring process.

Should your internship end early, EY will have no obligation to pay you beyond your last day of work.

**Labor Law**

Your regular hourly rate of pay will be $36.06 per hour. Your role is classified as non-exempt when you are working hours requiring overtime compensation, your rate of pay will be $54.09 per hour. Your salary will be paid bi-weekly. Designated pay day: every other Friday.
NOTICE OF HIRE – ACKNOWLEDGEMENT OF WAGE RATE AND DESIGNATED PAYDAY
Non-Exempt Employees
Employer Company Name: Ernst & Young U.S. LLP
FEIN: 34-6565596
Address: One Manhattan West New York, NY 10001-2177
Phone: +1 212 773 3000
Employee Name: Cecilia Culver, 5885396
Basis of pay: Annual
Your regular rate of pay: $36.06 per hour
Your overtime rate of pay: $54.09 per hour

**Confidentiality**

You acknowledge that you have read and understand the Global Data Protection and Confidentiality Policy (copy attached hereto) and that you shall abide by such policy. During and after the end of your employment with EY, you shall hold in confidence and not use or disclose, except to further EY's interests, any trade secrets or confidential business and technical information of EY or its clients ("EY Information") that you acquire as a result of your relationship with EY unless such information is in the public domain or is otherwise made public by others through no fault of yours. EY Information includes, but is not limited to, EY business plans, methodologies, technologies (including computer software), training materials, personnel information, client lists, pricing information and all confidential information concerning EY clients or prospects, and EY's business and professional relationships with its clients, prospects, and staff members.  Upon the termination of your employment, you shall not remove, retain, copy, or utilize any such EY information.

You understand that nothing in this offer or the Global Data Protection and Confidentiality Policy shall be construed to prohibit you from (i) filing a charge with any government or self-regulatory agency charged with enforcing any law (such as the U.S. Securities and Exchange Commission ("SEC"), the U.S. Equal Employment Opportunity Commission ("EEOC"), the U.S. National Labor Relations Board ("NLRB"), or any other federal, state or local agency); (ii) participating in any government agency investigation or action; (iii) reporting or providing truthful information to any government agency or self-regulatory organization, or making other disclosures that are protected by applicable law or regulation; (iv) or soliciting or receiving legal advice from your attorney.

You further acknowledge that you have been notified that pursuant to the Defend Trade Secrets Act of 2016, an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed under seal in a legal proceeding. Further, an individual who files a legal claim for retaliation by an employer for reporting a suspected violation of law may disclose the employer's trade secrets to the attorney and use the trade secret information in a legal proceeding if the individual: (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

**Intellectual Property Rights**

You understand that by accepting this offer to join EY, you hereby assign to the Firm all your rights, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, conceived, reduced to practice, or learned by you, either alone or with others, during the period of your employment by the Firm; provided, however, that the preceding assignment does not apply to inventions conceived and/or created by you (i) solely on your own time, (ii) wholly unrelated to your employment at the Firm and/or the specific services provided by the Firm to its clients, and (iii) without the use of any EY resources (including, without limitation, facilities, systems, technology, information, supplies or personnel).  To the extent required by applicable Copyright laws, you agree to assign in the future (when any copyrightable Inventions are first fixed in a tangible medium of expression) your Copyright rights in and to such Inventions.  During the period of your employment and for one (1) year after termination of your employment, you agree that you will promptly and fully disclose to the Firm in writing a complete description of all Inventions authored, conceived, or reduced to practice by you, either alone or jointly with others.  In

DocuSign Envelope ID: F22F86A0-0489-40B0-9CA1-7BE5C1F656C4

addition, you will promptly disclose to the Firm a copy of all patent applications filed by you or on your behalf, or naming you as an inventor or co-inventor, within one (1) year after termination of employment.

As used in this offer, the term *"Intellectual Property Rights"* means all trade secrets, Copyrights, trademarks, mask work rights, patents, patent applications and other intellectual property rights recognized by the laws of any jurisdiction or country; the term *"Inventions"* means all trade secrets, inventions, mask works, ideas, processes, formulas, software in source or object code versions, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology and all Intellectual Property Rights therein; and the term *"Copyright"* means the exclusive legal right to reproduce, perform, display, distribute and make derivative works of a work of authorship (as a literary, musical, or artistic work) recognized by the laws of any jurisdiction or country.

**Code of Conduct**

The Global Code of Conduct provides the ethical framework that guides our response to the challenging and sometimes difficult choices we face. Upon joining EY, you will be responsible for being familiar with and complying with the Code of Conduct and with any other procedural or administrative policies that apply to your particular job functions. You will be required to sign the Code of Conduct affirmation upon your hire and thereafter on an annual basis. A link to the Code of Conduct is included for your review. Please read it over carefully so that you will be prepared to sign the Code of Conduct during your first days with EY.

**Extracurricular Employment**

EY employees (including interns) may not be an employee (even part-time or seasonal employment) of an entity that is restricted under EY's Independence rules (i.e., an audit client or its affiliates) at the same time. Any such employment with a restricted entity must be terminated prior to your start date at EY.

**Independence Policy**

As an intern, you are subject to EY's independence policy. There are certain considerations you should consider regarding complying with our policy:

- You are subject to the policy with respect to engagements on which you personally participate. Therefore, you are not required to dispose of any investments at this time. It is your responsibility PRIOR TO PROVIDING ANY SERVICES to inform your supervisor/manager of any possible independence issues regarding client engagements to which you are assigned. You will be rescheduled when necessary to avoid any possible independence issues.
- As an EY employee, including interns, you cannot be an employee (even if employed part-time or seasonal) for any restricted entity at the same time. If the employer is a restricted entity, you will need to terminate employment prior to your start date at EY.
- You can use this link to ask any questions you may have. Your recruiter can also put you in touch with an Independence professional as necessary to discuss complex questions/concerns..
- Once you have joined EY, it will be your ongoing responsibility to ensure full compliance with EY's policy requirements. This may include possible restrictions on deposit, insurance, brokerage, and lending relationships and immediate family members' employment or participation in employee benefits with an audit client if you become a covered person. (Note that Practice Support and Administrative Support personnel are not subject to EY'Ss independence policies.)
- Should you become a regular full-time employee at a future date, you will be required to follow EY's independence policy. We have included a summary for your review.
- EY performs independence compliance audits on personnel which will necessitate your submission of account statements, tax returns, and other documents. You will be contacted later on this matter if selected for an audit.

**Identity & Eligibility Document**

To comply with the federal immigration laws, we are required, as a condition of employment, to have you complete a Form I-9 and present the specified identity and employment eligibility documents for our review upon commencing employment with us. This form will be sent to you, along with other documentation and information, as your start date approaches.

**Keeping in Contact**

Knowing where and how to get in touch with you is vital to ensuring your smooth transition to EY. Information will periodically need to be shared with you and/or provided by you during this transition period. Maintaining accurate contact information in

DocuSign Envelope ID: F22F86A0-0489-40B0-9CA1-7BE5C1F656C4

your online profile will enable us to ensure that vital payroll and other important documents can be delivered promptly. Please update as necessary. Also, you will need to provide an unofficial transcript, including coursework completed to date, on or before your first day of employment.

**How to Respond**

If the terms stated in (1) this letter; and (2) all attachments to this letter (listed below for your reference) are agreeable to you, please indicate your acceptance by signing. Signing this letter constitutes your understanding and acceptance of the terms outlined in: (1) this letter; and (2) all attachments. Please contact your recruiter, Jennifer Petinge at Jennifer.Petinge@ey.com if you have questions or need additional time to make your decision. We look forward to providing you with the opportunity for a rewarding career.

Sincerely,

Robert Carroll
Partner

**Enclosures**

Public Company Accounting Oversight Board (PCAOB): Click Here
Global Data Protection and Confidentiality Policy: Click Here
Secure Disposal of Records Containing Confidential Information: Click Here
Common Ground Dispute Resolution Program: Click Here
Global Code of Conduct - *for informational purposes only.* Click Here
Independence Statement of Intent - *for informational purposes only:* Click Here

I have read the contents of this letter and the attached information and agree to the terms and conditions herein.

DocuSigned by:      10/23/2023

Cecilia Culver

# Ex. 2

Docusign Envelope ID: 36BADFFF-1C35-48BA-853C-BBF61C02711A



**Building a better working world**

August 23, 2024

Dear Cecilia:

Congratulations! On behalf of Ernst & Young U.S. LLP ("EY" or the "Firm"), we are excited to have you join us.

Your bold ambition is just the beginning. Here, you'll learn from the best, surround yourself with the curious, ask better questions to seek better answers and build a better working world. You'll harness our global scale, our technology, our teams and our culture to realize your potential. In the information that follows, you will find the necessary details about your start date, orientation, and benefits, as well as firm policies, and if applicable, certification requirements.

| | |
|---|---|
| **Title** | USA - Tax - BTS QUEST - Washington - Staff - Winter 2025 |
| **Service Line** | Tax |
| **Sub-Service Line** | Business Tax Services (BTS) |
| **Practice** | Quantitative Economics and Statistics (QUEST) within EY's National Tax Department |
| **Rank** | Staff/Assistant |
| **Location** | Washington - 1101 New York Ave |
| **Compensation** | $90,000.00 Annually |
| **Start Date** | Winter 2025 |
| **Decision Date** | September 6, 2024 |

**Compensation**

Upon joining EY, your compensation as noted above will be payable bi-weekly. EY has a pay philosophy to be market competitive, internally equitable and pay for performance.  Any adjustments to your base annual salary will be based on those factors as well as EY's overall firm performance and practice performance. EY's Performance Year aligns with the Fiscal year which begins on or about July 1 and concludes on or about June 30. Practice leadership will make the final decision regarding any base annual salary adjustments awarded. Your start date will determine when you will be eligible for a salary adjustment. We expect you will be eligible for a salary adjustment no later than August 2025. In addition to your base pay, you will have the opportunity to be recognized for contributions and performance through a variety of variable pay programs.

**Benefits**

As a member of our professional staff, you will be eligible to participate in the benefits plans made available through EY. If you elect any insurance coverage, please note that it does not become effective for new staff members and their dependents until

Docusign Envelope ID: 36BADFFF-1C35-48BA-853C-BBF61C02711A

the first day of the month following the month in which your employment begins. For example, a person starting on 25 June would be eligible for insurance coverage effective 1 July. We mention this so you may arrange personal coverage if a lapse of time occurs between the date your present medical insurance ceases and ours becomes effective. For detailed information regarding your benefits, contact a Better You representative at +1 877 339 1239 or visit Better You.

**Terms of Offer and Employment**

Your employment relationship with EY is "at-will." This means that either you or EY may terminate the relationship at any time for any reason with or without notice or cause, unless stated otherwise in an employment agreement signed by an authorized person. Nothing contained in any policies or rules, or any representation of the contrary, will alter that relationship unless in writing signed by an authorized person. This offer is contingent upon your agreement that any dispute, controversy or claim (as defined in the EY Common Ground Dispute Resolution Program) arising between you and EY will be submitted first to mediation and, if mediation is unsuccessful, then to binding arbitration in accordance with the terms and conditions set forth in 08363-201US, which describes EY's Common Ground Dispute Resolution Program. By signing this offer, you acknowledge that you have read and understand the EY Common Ground Dispute Resolution Program (08363-201US) and that you shall abide by it. YOU ACKNOWLEDGE THAT YOU HAVE AGREED TO WAIVE ANY RIGHT YOU MAY HAVE TO HAVE A DISPUTE BETWEEN YOURSELF AND EY DETERMINED BY A JURY OR COURT OF LAW AND THAT ALL SUCH DISPUTES SHALL BE RESOLVED THROUGH MEDIATION AND ARBITRATION. A link to the Common Ground Dispute Resolution Program is included for your review.

This offer requires you to successfully complete the educational requirements for this position and is contingent on the completion of a criminal background investigation.  Furthermore, our offer is subject to the terms and conditions set forth in the application you completed for employment at EY and upon your: (1) continued maintenance of a strong academic record, including, without limitation, in course work that EY deems relevant to the position for which you are receiving an offer; and (2) timely completion of the degree(s) you are pursuing at the time you receive this offer. EY may withdraw your offer of employment if it determines in its discretion that these conditions have not been met. As such, you will be expected to send an unofficial copy of your final transcript prior to your start date.  Additionally, an unofficial transcript following a semester/quarter and an official, degree confirming transcript following graduation may be requested.

**In addition, you are expected to notify EY if you have been, are, or become the subject of a conduct investigation at while attending your college/university.**

You must complete a Public Company Accounting Oversight Board (PCAOB) Consent Form. A link to the PCAOB Consent Form is included for your review, which you will be required to sign during the hiring process.

**Labor Law**

Due to the nature of your job duties, you are classified as an Exempt employee under the Fair Labor Standards Act and you are not eligible for overtime pay.
NOTICE OF HIRE – ACKNOWLEDGEMENT OF WAGE RATE AND DESIGNATED PAYDAY
Exempt Employees
Employer Company Name: Ernst & Young U.S. LLP
FEIN: 34-6565596
Address: One Manhattan West New York, NY 10001-2177
Phone: +1 212 773 3000
Employee Name: Cecilia Culver, 5885396
Basis of pay: Annual
Effective on your first day of employment, your annual base salary will be $90,000.00,and will be payable bi-weekly. Designated pay day: Every other Friday.

**Confidentiality**

You acknowledge that you have read and understand the Global Data Protection and Confidentiality Policy (copy attached hereto) and that you shall abide by such policy. During and after the end of your employment with EY, you shall hold in confidence and not use or disclose, except to further EY's interests, any trade secrets or confidential business and technical information of EY or its clients ("EY Information") that you acquire as a result of your relationship with EY unless such information is in the public domain or is otherwise made public by others through no fault of yours. EY Information includes, but is not limited to, EY business plans, methodologies, technologies (including computer software), training materials, personnel information, client lists, pricing information and all confidential information concerning EY clients or prospects, and EY's business and professional relationships with its clients, prospects, and staff members.  Upon the termination of your employment, you shall not remove, retain, copy, or utilize any such EY information.

You understand that nothing in this offer or the Global Data Protection and Confidentiality Policy shall be construed to prohibit you from (i) filing a charge with any government or self-regulatory agency charged with enforcing any law (such as the U.S. Securities and Exchange Commission ("SEC"), the U.S. Equal Employment Opportunity Commission ("EEOC"), the U.S.

Docusign Envelope ID: 36BADFFF-1C35-48BA-853C-BBF61C02711A

National Labor Relations Board ("NLRB"), or any other federal, state or local agency); (ii) participating in any government agency investigation or action; (iii) reporting or providing truthful information to any government agency or self-regulatory organization, or making other disclosures that are protected by applicable law or regulation; (iv) or soliciting or receiving legal advice from your attorney.

You further acknowledge that you have been notified that pursuant to the Defend Trade Secrets Act of 2016, an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed under seal in a legal proceeding. Further, an individual who files a legal claim for retaliation by an employer for reporting a suspected violation of law may disclose the employer's trade secrets to the attorney and use the trade secret information in a legal proceeding if the individual: (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

**Intellectual Property Rights**

You understand that by accepting this offer to join EY, you hereby assign to the Firm all your rights, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, conceived, reduced to practice, or learned by you, either alone or with others, during the period of your employment by the Firm; provided, however, that the preceding assignment does not apply to inventions conceived and/or created by you (i) solely on your own time, (ii) wholly unrelated to your employment at the Firm and/or the specific services provided by the Firm to its clients, and (iii) without the use of any EY resources (including, without limitation, facilities, systems, technology, information, supplies or personnel).  To the extent required by applicable Copyright laws, you agree to assign in the future (when any copyrightable Inventions are first fixed in a tangible medium of expression) your Copyright rights in and to such Inventions.  During the period of your employment and for one (1) year after termination of your employment, you agree that you will promptly and fully disclose to the Firm in writing a complete description of all Inventions authored, conceived, or reduced to practice by you, either alone or jointly with others.  In addition, you will promptly disclose to the Firm a copy of all patent applications filed by you or on your behalf, or naming you as an inventor or co-inventor, within one (1) year after termination of employment.

As used in this offer, the term *"Intellectual Property Rights"* means all trade secrets, Copyrights, trademarks, mask work rights, patents, patent applications and other intellectual property rights recognized by the laws of any jurisdiction or country; the term *"Inventions"* means all trade secrets, inventions, mask works, ideas, processes, formulas, software in source or object code versions, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology and all Intellectual Property Rights therein; and the term *"Copyright"* means the exclusive legal right to reproduce, perform, display, distribute and make derivative works of a work of authorship (as a literary, musical, or artistic work) recognized by the laws of any jurisdiction or country.

**Code of Conduct**

The Global Code of Conduct provides the ethical framework that guides our response to the challenging and sometimes difficult choices we face. Upon joining EY, you will be responsible for being familiar with and complying with the Code of Conduct and with any other procedural or administrative policies that apply to your particular job functions. You will be required to sign the Code of Conduct affirmation upon your hire and thereafter on an annual basis. A link to the Code of Conduct is included for your review. Please read it over carefully so that you will be prepared to sign the Code of Conduct during your first days with EY.

**Extracurricular Employment**

EY employees (including interns) may not be an employee (even part-time or seasonal employment) of an entity that is restricted under EY's Independence rules (i.e., an audit client or its affiliates) at the same time. Any such employment with a restricted entity must be terminated prior to your start date at EY.

**Independence Policy**

All client serving employees are subject to EY's independence policy. There are certain considerations you should consider regarding complying with our policy:

- You, your spouse or spousal equivalent, and dependents (immediate family members) are prohibited from holding any financial interests in EY's audit and fully proscribed non-audit clients, and disposal is required prior to starting at EY.
- As an EY employee, you cannot be an employee (even if employed part-time or seasonal) for any restricted entity (i.e., an audit client or its affiliates) at the same time. If the employer is a restricted entity, you will need to terminate employment prior to your start date at EY.
- You can use this link to ask any questions you may have. Your recruiter can also put you in touch with an Independence professional as necessary to discuss complex questions/concerns.
- Once you have joined EY, it will be your ongoing responsibility to ensure full compliance with EY's independence policy requirements. This may include possible restrictions on deposit, insurance, brokerage, and lending relationships and

Docusign Envelope ID: 36BADFFF-1C35-48BA-853C-BBF61C02711A

- immediate family members' employment or participation in employee benefits with an audit client if you become a covered person. (Note that Practice Support and Administrative Support personnel are not subject to EY's independence policies.)
  EY performs independence compliance audits on personnel which will necessitate your submission of account statements, tax returns, and other documents. You will be contacted later on this matter if selected for an audit.

**Professional Certifications**

One critical component of providing superior client service is the requirement that our employees obtain and maintain professional certification(s) in their area of specialty. As such, our service lines have established policies regarding required certifications, including those required for consideration for promotion. As discussed with your recruiter, the required certification requirements for your service line and sub-service line can be found on the EY Professional Certification Guide. You will at all times be responsible for understanding and complying with the standards you will find there.

**Identity & Eligibility Document**

To comply with the federal immigration laws, we are required, as a condition of employment, to have you complete a Form I-9 and present the specified identity and employment eligibility documents for our review upon commencing employment with us. This form will be sent to you, along with other documentation and information, as your start date approaches.

**Orientation & Respect at Work**

During your first days with EY, you can expect to receive an orientation, which includes general information about EY, your career development, client assignments and/or job responsibilities. Additionally, you will be introduced to administrative matters that are important to our internal business processes. As part of EY's orientation process, you are required to attend or participate in various training modules or programs relating to conduct and respect in the workplace within certain prescribed times of your start date.

**Keeping in Contact**

Knowing where and how to get in touch with you is vital to ensuring your smooth transition to EY. Information will periodically need to be shared with you and/or provided by you during this transition period. Maintaining accurate contact information in your online profile will enable us to ensure that vital payroll and other important documents can be delivered promptly. Please update as necessary. Also, you will need to provide an unofficial transcript, including coursework completed to date, on or before your first day of employment.

**How to Respond**

If the terms stated in (1) this letter; and (2) all attachments to this letter (listed below for your reference) are agreeable to you, please indicate your acceptance by signing. Signing this letter constitutes your understanding and acceptance of the terms outlined in: (1) this letter; and (2) all attachments. Please contact your recruiter, Alex Swit at Alex.Swit@ey.com if you have questions or need additional time to make your decision. We look forward to providing you with the opportunity for a rewarding career.

Sincerely,

Kevin Flynn
Partner

**Enclosures**

EY Better You: Click Here
Public Company Accounting Oversight Board (PCAOB): Click Here
Global Data Protection and Confidentiality Policy: Click Here
Common Ground Dispute Resolution Program: Click Here
Global Code of Conduct - *for informational purposes only*. Click Here
Independence Statement of Intent - *for informational purposes only:* Click Here

I have read the contents of this letter and the attached information and agree to the terms and conditions herein.

DocuSigned by:
Cecilia Culver
36F14275FA9547F...                    8/23/2024

# Ex. 3

# FY25 LEAD Feedback for Cecilia Rose Culver

**INSTRUCTIONS**



**Providing feedback:**

**When providing feedback, be sure to:**

- Share your observations about how this person demonstrated what is expected in their role.
- For detailed expectations, click here to view the individual's Role profile (and then under Job Information, click Show more). It is not an exhaustive list but should be used as a guide. Where Role profiles are not assigned, refer to Rank expectations.
- Your written comments should include examples, especially if you selected anything other than "Met" or "Not observed".

## What strengths does this individual demonstrate?

Comments by Menuka Ban
Cecilia is very attentive to the directions provided to her. She remains focused on the task at hand and consistently delivers high-quality work. Her R skills are excellent and bring much-needed expertise to the policy projects.
I understand that Cecilia would like to focus on sampling projects, but I hope she can remain involved in policy projects as much as possible. We need team members like Cecilia in policy projects, who not only bring technical skills but also see the big picture and help the team excel in complex projects.

## What could this individual do to have a greater impact?

Comments by Menuka Ban
I would like Cecilia to share her thoughts and views more in the projects. Cecilia is generally quiet, and there is nothing wrong with that. Just bringing up issues that she has seen, asking questions, and summarizing what she has heard in the call will help her be more vocal and let people know that she is listening and following the conversations.
Cecilia already takes a lot of initiative on projects and does things without being told. I would like Cecilia to continue doing this in the future. When the next steps are not clear but she has time to continue making progress, she can look for opportunities to expand the analysis, follow up on notes, and make progress where she can. If she is not sure that she can do that, she can always ask via Teams or email and get confirmation from other team members.

## Demonstrates the technical skills expected in their role.

For example:

- Demonstrates an understanding of technical concepts related to their role.
- Applies knowledge and expertise to resolve issues and deliver results.
- Continues to develop technical knowledge and skills; stays up to date on latest trends.

Response
Significantly exceeded expectations

## Demonstrates the business skills expected in their role.

For example:

- Communicates with impact; effectively conveying ideas, complex concepts, or difficult messages.
- Understands the business of client/stakeholder to deliver quality work.

- Builds and manages relationships based on trust.

Response
Significantly exceeded expectations

## Demonstrates the leadership skills and behaviors expected in their role.

For example:

- Contributes to an inclusive environment and seeks different perspectives.
- Seeks opportunities to collaborate and team and adapts their style to work effectively with others.
- Brings out the best in themselves and others.

Response
Significantly exceeded expectations

## Delivers quality work and manages risks expected in their role.

For example:

- Upholds the principles of the global Code of Conduct, maintaining independence and objectivity.
- Sets high standards, holding self and others accountable for delivery of quality results.
- Ensures compliance with relevant risk management practices and regulatory requirements.

If you are providing feedback to someone working in audit, click here for guidance (if available in your location).

Response
Significantly exceeded expectations

Quality and risk management comments by Menuka Ban
Meets QRM requirements

## What is the ONE key area this individual should prioritize to elevate their performance?
Response
Technical skills

# Ex. 4

## Administrative Leave Notification

**Jason P Morrissey** <jason.morrissey@ey.com>                                    Sun, May 18, 2025 at 1:59 PM
To: Cecilia R Culver <Cecilia.R.Culver@ey.com>, "ceciliarculver@gmail.com" <ceciliarculver@gmail.com>
Cc: Andrew D Phillips <Andrew.Phillips@ey.com>

Cecilia,

I am writing to notify you that EY is placing you on administrative leave effective immediately in connection with your speech at the George Washington University commencement. We will be deactivating your systems and premises access during this time.

If you have any questions, please contact me.

Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United
Cell:+1 816-835-0944 | jason.morrissey@ey.com
Website: www.ey.com
Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

# Ex. 5

To: +1 (202) 255-3880,
+1 (816) 835-0944

iMessage
Today 2:01 PM

+1 (816) 835-0944

 **FILE_9831.pdf**
PDF Document · 440 KB

Cecilia:  My name is Jason Morrissey and I am Deputy Talent Leader for Tax. Please see the attached. Andrew Phillips and I will plan to call you on Monday to discuss this matter.

iMessage

# Ex. 6

## Administrative Leave Notification

**Cecilia Culver** <ceciliarculver@gmail.com>                    Mon, May 19, 2025 at 12:30 PM
To: Jason P Morrissey <jason.morrissey@ey.com>
Cc: Andrew D Phillips <andrew.phillips@ey.com>

Jason,

Thank you for your understanding and the resources you provided.

Let me know what time works best for you and Andrew, as well as how we will meet (phone call, Zoom, etc). Will anyone else be joining us for the meeting?

Before we meet, could you provide me with any specific topics we will be discussing and questions you have for me? Additionally, if you believe I have violated any EY policies or guidelines, could you send those to me for review?

Cecilia

**Cecilia Culver** (she/her/hers)

On Mon, May 19, 2025 at 10:13 AM Jason P Morrissey <jason.morrissey@ey.com> wrote:

> Cecilia,
>
> In response to your separate message to me, we are happy to postpone a call.
>
> Additionally, please remember that you can reach out to EY Assist/Lyra (Lyra Health or 1 800 333 4119, prompt 1) for wellbeing needs and resources.
>
> Further, as you are on administrative leave, please refrain from speaking to any EY clients.
>
> Finally, moving forward, please use email as our mode of communication.
>
> Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United
Cell:+1 816-835-0944 | jason.morrissey@ey.com
Website: www.ey.com
Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

---

**From:** Jason P Morrissey
**Sent:** Sunday, May 18, 2025 12:59 PM
**To:** Cecilia R Culver <Cecilia.R.Culver@ey.com>; 'ceciliarculver@gmail.com' <ceciliarculver@gmail.com>
**Cc:** Andrew D Phillips <andrew.phillips@ey.com>
**Subject:** Administrative Leave Notification

Cecilia,

I am writing to notify you that EY is placing you on administrative leave effective immediately in connection with your speech at the George Washington University commencement. We will be deactivating your systems and premises access during this time.

If you have any questions, please contact me.

Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United
Cell:+1 816-835-0944 | jason.morrissey@ey.com
Website: www.ey.com
Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

_____

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

# Ex. 7

## Administrative Leave Notification

**Cecilia Culver** <ceciliarculver@gmail.com>                    Wed, May 21, 2025 at 9:43 AM
To: Jason P Morrissey <jason.morrissey@ey.com>
Cc: Andrew D Phillips <andrew.phillips@ey.com>

Jason and Andrew,

Please confirm receipt of my previous email.

Cecilia

**Cecilia Culver** (she/her/hers)

On Mon, May 19, 2025 at 12:30 PM Cecilia Culver <ceciliarculver@gmail.com> wrote:

Jason,

Thank you for your understanding and the resources you provided.

Let me know what time works best for you and Andrew, as well as how we will meet (phone call, Zoom, etc). Will anyone else be joining us for the meeting?

Before we meet, could you provide me with any specific topics we will be discussing and questions you have for me? Additionally, if you believe I have violated any EY policies or guidelines, could you send those to me for review?

Cecilia

**Cecilia Culver** (she/her/hers)

On Mon, May 19, 2025 at 10:13 AM Jason P Morrissey <jason.morrissey@ey.com> wrote:

Cecilia,

In response to your separate message to me, we are happy to postpone a call.

Additionally, please remember that you can reach out to EY Assist/Lyra (Lyra Health or 1 800 333 4119, prompt 1) for wellbeing needs and resources.

Further, as you are on administrative leave, please refrain from speaking to any EY clients.

Finally, moving forward, please use email as our mode of communication.

Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United
Cell:+1 816-835-0944 | jason.morrissey@ey.com
Website: www.ey.com
Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

---

**From:** Jason P Morrissey
**Sent:** Sunday, May 18, 2025 12:59 PM
**To:** Cecilia R Culver <Cecilia.R.Culver@ey.com>; 'ceciliarculver@gmail.com' <ceciliarculver@gmail.com>
**Cc:** Andrew D Phillips <andrew.phillips@ey.com>
**Subject:** Administrative Leave Notification

Cecilia,

I am writing to notify you that EY is placing you on administrative leave effective immediately in connection with your speech at the George Washington University commencement. We will be deactivating your systems and premises access during this time.

If you have any questions, please contact me.

Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United
Cell:+1 816-835-0944 | jason.morrissey@ey.com
Website: www.ey.com
Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

# Ex. 8

**From:** **Cecilia Culver**
**Subject:** Re: FW: Administrative Leave Notification
**Date:** May 22, 2025 at 3:26 PM
**To:** Tony C Jordan  Tony.Jordan@ey.com
**Cc:** Tim Henseler  Tim.Henseler@ey.com

Tony,

Thank you for your response. To ensure I can participate in this discussion meaningfully and in accordance with procedural fairness, I kindly request the following clarifications and accommodations:

1) Please specify the nature of the "issue at hand" and the policies or guidelines relevant to this discussion. As this meeting appears to be investigatory, I would like to understand the specific allegations or concerns prompting this dialogue.
2) Please provide copies of all policies, communications, or materials referenced in connection with my administrative leave or this meeting. This includes any complaints, reports, or documentation supporting the decision to initiate this process.
3) Given the potential implications of this discussion, I intend to consult with legal counsel to better understand my rights and responsibilities. To facilitate this, I request a reasonable delay to review the requested materials, find counsel, and seek advice.
4) I propose postponing the meeting to one week after you send me the information I'm requesting to allow adequate consultation and preparation. I believe providing me with sufficient notice and information will help me respond effectively to your inquiries.
5) Please provide written confirmation of the specific terms governing my administrative leave, including:

- Whether the leave is paid or unpaid
- The anticipated duration and process for extensions
- Any restrictions on accessing EY benefits

I remain committed to cooperating with this process, but must insist on transparency to safeguard my rights.

Cecilia

On Thu, May 22, 2025 at 12:33 PM Tony C Jordan <Tony.Jordan@ey.com> wrote:

> Cecilia,
>
> Thank you for your response.
>
> The purpose of the discussion is for me to able to ask you some questions about the issue at hand. I don't intend to provide specific questions in advance, nor is this a discussion where we will be providing and discussing specific EY policies.
>
> As for attendance, from our side it will be me and a member of my team (copied here). Jason and Andrew will not be joining the call.
>
> If you are willing to connect, please let me know times today that will work for you and I'll send along a calendar invite.
>
> Thanks,

Tony

**Tony Jordan |** Americas and US Chief Ethics & Compliance Officer

Ernst & Young LLP

Office:+1 617 585 1951 | tony.jordan@ey.com

Executive Assistant: Heather Gilliam | +1 216 536 8630 | Heather.Gilliam@ey.com

---

**From:** Cecilia Culver
**Sent:** Thursday, May 22, 2025 12:19 PM
**To:** Tony C Jordan <Tony.Jordan@ey.com>
**Subject:** Re: FW: Administrative Leave Notification

Tony,

I am happy to meet with you, though I would like to clarify a few things before setting a time.

Are you able to provide specific topics we will be covering and any questions you have for me in advance of the meeting, including any company policies that will be discussed?

Additionally, I was under the impression that I would be meeting with Jason and Andrew - will they be joining us for this meeting or will a separate meeting be held?

Best,
Cecilia

On Thu, May 22, 2025 at 9:58 AM Tony C Jordan <Tony.Jordan@ey.com> wrote:

> Cecilia,
>
> Following up on your email below to Jason Morrissey, I'd like to set up time for us to have a discussion with you. Can you please let me know if there are times today that would work with your schedule?
>
> Thanks,
>
> Tony Jordan
>
> **Tony Jordan |** Americas and US Chief Ethics & Compliance Officer
>
> Ernst & Young LLP
>
> Office:+1 617 585 1951 | tony.jordan@ey.com
>
> Executive Assistant: Heather Gilliam | +1 216 536 8630 | Heather.Gilliam@ey.com
>
> ---
>
> **From:** Cecilia Culver
> **Sent:** Wednesday, May 21, 2025 9:44 AM

**To:** Jason P Morrissey <jason.morrissey@ey.com>
**Cc:** Andrew D Phillips <Andrew.Phillips@ey.com>
**Subject:** Re: FW: Administrative Leave Notification

Jason and Andrew,

Please confirm receipt of my previous email.

Cecilia

**Cecilia Culver** (she/her/hers)

On Mon, May 19, 2025 at 12:30 PM Cecilia Culver <ceciliarculver@gmail.com> wrote:

> Jason,
>
> Thank you for your understanding and the resources you provided.
>
> Let me know what time works best for you and Andrew, as well as how we will meet (phone call, Zoom, etc). Will anyone else be joining us for the meeting?
>
> Before we meet, could you provide me with any specific topics we will be discussing and questions you have for me? Additionally, if you believe I have violated any EY policies or guidelines, could you send those to me for review?
>
> Cecilia
>
> **Cecilia Culver** (she/her/hers)
>
> On Mon, May 19, 2025 at 10:13 AM Jason P Morrissey <jason.morrissey@ey.com> wrote:
>
>> Cecilia,
>>
>> In response to your separate message to me, we are happy to postpone a call.
>>
>> Additionally, please remember that you can reach out to EY Assist/Lyra (Lyra Health or 1 800 333 4119, prompt 1) for wellbeing needs and resources.
>>
>> Further, as you are on administrative leave, please refrain from speaking to any EY clients.
>>
>> Finally, moving forward, please use email as our mode of communication.
>>
>> Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100,
Kansas City, Missouri, 64108, United

Cell:+1 816-835-0944 |
jason.morrissey@ey.com

Website: www.ey.com

Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

**From:** Jason P Morrissey
**Sent:** Sunday, May 18, 2025 12:59 PM
**To:** Cecilia R Culver <Cecilia.R.Culver@ey.com>; 'ceciliarculver@gmail.com' <ceciliarculver@gmail.com>
**Cc:** Andrew D Phillips <andrew.phillips@ey.com>
**Subject:** Administrative Leave Notification

Cecilia,

I am writing to notify you that EY is placing you on administrative leave effective immediately in connection with your speech at the George Washington University commencement. We will be deactivating your systems and premises access during this time.

If you have any questions, please contact me.

Jason



**Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100,
Kansas City, Missouri, 64108, United

Cell:+1 816-835-0944 |
jason.morrissey@ey.com

Website: www.ey.com

Assistant: Susan Keller | +1 312-879-3524 | susan.keller@ey.com

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

# Ex. 9

## EY Common Ground Dispute Resolution Program
**United States**

| | |
|---|---|
| **SCORE Number** | 08363-201US |
| **Distribution** | US Personnel |
| **CC** | |
| **Issue Date** | March 1, 2020 |
| **Issuer(s)** | Ron B. Hauben |
| **Issuing Function(s)** | General Counsel's Office |
| Supersede(s) | AA7523 |

# POLICY AND PRACTICE STATEMENT

EY COMMON GROUND DISPUTE RESOLUTION PROGRAM

### I.   Preamble

The Common Ground Dispute Resolution Program, as outlined in this document (the "Program"), is intended to provide a fair, prompt and cost-effective mechanism for resolving disputes. The Program is the sole method for resolving disputes within its coverage. It is not intended to limit or expand substantive claims or remedies that would otherwise be available under law.

### II.   Coverage of Program

A.   *Entities and persons covered.*

1.   "Firm" means Ernst & Young LLP and Ernst & Young US LLP, all of their subsidiaries and affiliates, and any successor entities (together, the "Entities"). It also includes all present and former Partners, Principals, agents and employees of the Entities against whom a claim is asserted for acts or omissions arising out of their duties for an Entity.

2.   As an applicant for employment or an employee of the Firm, you and anyone else who may assert a claim belonging to, obtained from or on behalf of, you are bound by the terms and conditions of the Program. You are, and remain, bound by the Program even if you are not hired by the Firm, or are not, or are no longer, employed by the Firm, unless you become a Partner or Principal in the Firm (Partners and Principals of the Firm are covered by a different dispute resolution program).

3.  This program amendment amends and supersedes all prior versions of the Program and is effective April 1, 2020.

B.  *Disputes covered.*

1.  Except as specified in the next subsection, all claims, controversies or other disputes between the Firm and you that could otherwise be resolved by a court ("Covered Disputes") shall be resolved through the Program. Both the Firm and you give up any right to resolve any Covered Dispute through any other means. **Neither the Firm nor you shall be able to sue in court in connection with a Covered Dispute.**

2.  Covered Disputes include, but are not limited to:

    a.  Claims based on federal statutes, such as Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Fair Labor Standards Act, the Equal Pay Act, the Rehabilitation Act of 1973, the Family and Medical Leave Act, the Employee Retirement Income Security Act, and the Worker Adjustment and Retraining Notification Act, all as have been or may be amended.

    b.  Claims based on state and city statutes, regulations and local ordinances, including state, city and local anti-discrimination laws.

    c.  Claims based on common law theories, such as tort and contract.

    d.  Claims concerning wages, salary and incentive compensation programs, except as provided in Paragraph C below.

    e.  Claims relating to an employee benefit plan of the Firm, subject only to the prior satisfaction of any requirement for exhaustion of remedies under applicable plan documents.

    f.  Claims concerning application, interpretation and enforcement of the Program.

***All Covered Disputes, whether or not listed here, must be resolved through the Program.***

C.  *Disputes not covered.*

1.  The following types of claims are **not** Covered Disputes:

    a.  A claim solely for temporary, preliminary or interim injunctive relief, including a claim for such relief relating to the period before the Arbitrator (as defined below) is selected, including temporary restraining orders or preliminary injunctions.

    b.  Statutory claims for workers' compensation or unemployment insurance.

    c.  Administrative charges as described in Section V.D.1. (Administrative Process).

2.  For any claims between you and the Firm that, for any reason, are in a court (e.g., claims that are not Covered Disputes, claims where a court has declined to require dispute resolution under this Program), the parties agree to waive a trial by jury and to authorize the judge in the court to resolve the claim.

**III. Phase I — Mediation**

A.  *Definition.* If a Covered Dispute arises, the parties are required to try to resolve the Covered Dispute through mediation as set forth below.

B.  *Provider.* The Party initiating Phase I shall choose one of the following dispute resolution organizations as the Provider for Phase I. If the initiating Party does not choose a Provider within 10 days of Phase I being started, the other Party may choose the Provider.

    1.  The American Arbitration Association ("AAA")

    2.  JAMS or

    3.  The CPR International Institute for Conflict Prevention and Resolution ("CPR")

C.  *Initiation.* A party may start Phase I by giving the other party notice in writing in accordance with Section V.C. of the Program. The notice must describe the nature of the claim, a description of the dispute and the persons involved, and the remedy requested. If contemplated by the mediation procedures of the Provider, the Firm will contact the Provider on behalf of the parties for the purpose of initiating mediation.

D.  *Mediator.* The parties may agree on a mediator. If the parties do not agree, a party may request that a mediator be appointed by the Provider; however, any mediator appointed must be acceptable to each party and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive, officer, director or substantial equity owner of any Ernst & Young audit client. The mediator will help the parties attempt to resolve the Covered Dispute by agreement.

E.  *Mediation Rules.* The mediation will be conducted in accordance with the Program and the relevant mediation rules of the Provider as in effect on the date that Phase I is initiated. If the Provider is AAA, the AAA's employment mediation procedures will be used in conducting the mediation. The AAA procedures may be viewed here. If the Provider is JAMS, the mediation will be conducted as specified by the mediator. If the provider is CPR, CPR's employment mediation procedures will be used in conducting the mediation. The CPR procedures may be viewed here. Notwithstanding the foregoing, if there is any conflict between the Provider's rules and the Program, the Program will take precedence.

F.  *Attorney Representation*. Either party may choose to be represented by a lawyer in the mediation or may choose not to use a lawyer.

G.  *Venue.* The venue of the mediation will be the county or city nearest to where the employee's primary place of employment with the Firm is or was located, or, with respect to applicants, the county or city in which there is a Firm office nearest to the applicant's primary residence at the time the mediation is initiated, unless the parties agree otherwise. For the avoidance of doubt, the venue of the mediation must, in all events, be in the United States.

H.  *Fees and Expenses of Mediation.* For Phase I, you will be responsible for paying the lesser of (i) the fee specified by the Provider or (ii) an amount equal to the fee that you would have paid to a court to file a lawsuit asserting the same claim in the court of general jurisdiction in the venue of the mediation (the "Court Equivalent Fee"). The Firm will pay any other fees and expenses charged by the Provider or the mediator. You may contribute a greater portion if you so choose, up to half of the total.

I.  *Attorneys' Fees.* Each party shall be responsible for the party's own attorneys' fees and related expenses associated with Phase I.

J.  *Termination of Phase I.* Phase I shall end 90 days after it is initiated, whether or not the Covered Dispute has been resolved, unless the parties agree otherwise in writing. Upon the initiation of a mediation under the Program, the applicable statute of limitations shall be tolled during Phase I up to a maximum of 90 days, unless the parties agree otherwise in writing.

## IV.  Phase II — Arbitration

A.  *Definition.* If a Covered Dispute is not resolved in Phase I, either party may choose to proceed to binding arbitration, as provided below.

B.  *Phase I Default.* If a party files a lawsuit for a Covered Dispute in court in violation of the terms of the Program, the other party may choose to proceed directly to Phase II or to seek an order requiring the party who filed the lawsuit to satisfy the requirements of the Program.

C.  *Provider.* The Provider for Phase II shall be the initiating Party's choice of AAA, JAMS or CPR. It need not be the same provider used in Phase I. If the initiating Party does not select a Provider within 10 days of Phase II being started, the other Party may choose the Provider.

D.  *Arbitration Rules.* The arbitration will be conducted in accordance with the Program and the relevant arbitration rules of the Provider as in effect on the date Phase II is initiated ("Arbitration Rules"). AAA's employment arbitration rules may be viewed here, JAM's employment arbitration rules and procedures here, and CPR's employment dispute arbitration procedure and Non-Administered Arbitration Rules here. Notwithstanding the foregoing, if there is any conflict between the Arbitration Rules and the Program, the Program will take precedence.

E.  *Initiation.* A party may start Phase II by giving the other party notice in writing in accordance with Section V.C. of the Program.

F.  *Attorney Representation.* Either party may choose to be represented by a lawyer in the arbitration or may choose not to use a lawyer.

G.  *Number and Selection of Arbitrators.*

1.  If the total amount claimed, or counterclaimed, is $1 million or less, the arbitration will be conducted by one arbitrator. If the total amount claimed, or counterclaimed, is more than $1 million, the arbitration will be conducted by a panel of three arbitrators. A panel of one arbitrator does not have the authority to enter an award in excess of $1 million; an award in excess of $1 million may be made only if there is a panel of three arbitrators.

2.  A single arbitrator shall be selected as provided in the Provider's Arbitration Rules for employment disputes. A three-arbitrator panel shall be selected as follows: each party shall select one arbitrator from the list of potential arbitrators providers by the Provider and inform the Provider of the selection. The Provider will invite the party-selected arbitrators to serve without revealing which party had selected which arbitrator. Once appointed, the two party-selected arbitrators shall select the third arbitrator from the list of potential arbitrators provided by the Provider. Each party shall have a peremptory challenge(s) to a potential arbitrator on the list provided by the Provider and may assert challenges for cause, in accordance with the Provider's rules.

3.  Regardless of the number and manner of appointment of arbitrators, each arbitrator shall meet the applicable Provider's requirements for serving in a neutral and unbiased fashion.

4. All party-appointed arbitrators and single arbitrators shall be selected from:

   a. For AAA, the Employment Dispute Resolution Roster, or an equivalent list if such list is unavailable

   b. For JAMS, a list of potential arbitrators to be provided to the parties by the Provider or

   c. For CPR, a list of potential arbitrators to be provided to the parties by the Provider

5. No person may serve as an arbitrator unless that person is not, and will not become during the term of the arbitration, an employee, partner, executive, officer, director or substantial equity owner of any audit client of Ernst & Young LLP.

6. The single arbitrator or the panel of three arbitrators, as the case may be, is referred to below as the "Arbitrator."

H. *Arbitrator Jurisdiction.* Any issue about whether a claim, controversy or dispute is subject to arbitration, or about how the terms and conditions of the Program should be interpreted or whether they are binding on the parties, will be decided by the Arbitrator.

I. *Venue.* The venue of the arbitration will be, and the hearing, if any, will be conducted in, the county or city where the employee's primary place of employment is or was located, or, with respect to applicants, the county or city in which there is a Firm office nearest to the applicant's primary residence at the time the demand for arbitration is filed, unless the parties agree otherwise. For the avoidance of doubt, the venue of the arbitration must in all events be in the United States.

J. *Law Applicable to Arbitration.* In deciding a Covered Dispute, the Arbitrator will apply the substantive law, including burdens of proof, that would be applied by a court in the venue of the arbitration, except that Delaware law governs the formation of the parties' agreement under the Program. The Arbitrator may grant any relief that could be granted by such a court, but will have no power to grant any other relief. Nothing in the Program will limit or expand substantive claims or remedies that would otherwise be available under law.

K. *Separate Proceedings.*

   1. If there is more than one Covered Dispute between the Firm and you, all such Covered Disputes shall be heard in a single proceeding.

   2. Covered Disputes pertaining to different persons asserting claims under this Program will be heard in separate proceedings, even if the claims are substantially similar. This means that, to the maximum extent permitted by law, you and the Firm waive any right to participate in any class, collective or representative proceeding pertaining to a Covered Dispute.

L. *Discovery.* Consistent with the expedited nature of arbitration and the needs of the parties, each party may obtain discovery relevant to the Covered Dispute as follows:

   1. Each party may obtain reasonable discovery of documentary evidence.

   2. Each party may take the deposition of (i) three individuals of the party's choosing for no more than seven hours each and (ii) any expert witness designated by the other party.

   3. The Arbitrator shall permit additional discovery upon a showing of reasonable need, but shall protect the parties against discovery that is unduly burdensome.

4. The Arbitrator will issue subpoenas to third parties for such discovery on the reasonable request of a party, if permitted by law.

M. *Witnesses.* The parties shall exchange witness lists at least 10 days prior to any hearing. A party may not present a witness at a hearing if the name of the witness has not been provided to the opposing party in accordance with this rule.

N. *Summary Adjudication.* If, after giving the parties due opportunity to comment on the matter, the Arbitrator determines that all or part of a party's claim fails to state a legal claim or that there is no genuine issue of fact as to all or part of a party's claim, the Arbitrator shall have the authority to dismiss the claim or relevant portion thereof, or grant summary judgment for any part thereon, as appropriate and without further proceedings.

O. *Conduct of Hearing.* At an arbitration hearing, the parties shall have the right to present proof through testimony and documentary evidence, and to cross-examine witnesses who testify at the hearing.

P. *Fees and Expenses.* Fees and expenses of the arbitration will be handled as follows:

1. <u>Fees and expenses of Arbitration</u>. The Firm will pay all fees and costs charged by the Provider or Arbitrator, except that, if you did not pay any fees in connection with Phase I, you will be required to pay the fees you otherwise would have been required to pay in Phase I. You may contribute a greater portion if you so choose, up to half.

2. <u>Party attorney fees and other expenses</u>. Each party will be responsible for the party's own attorneys' fees and related expenses, but the Arbitrator will have the authority to provide for reimbursement of a party's attorneys' fees, in whole or part, to the extent permitted under applicable law, as a part of a final award.

Q. *Award.* The Arbitrator shall render an award and written opinion stating the basis for the award. The Arbitrator is expected to issue the award and opinion no later than 30 days from the date the arbitration hearing concludes or post-hearing briefs (if requested) are received, whichever is later, but a failure of the Arbitrator to meet this or any other deadline shall not affect the validity of the arbitration and award. The opinion shall set forth the factual and legal basis for the award and shall include a summary of the issues, including the nature of the dispute, the relief requested and awarded, a statement of any other issues resolved and a statement regarding the disposition of any statutory claims. An award shall be final and binding on the parties to the fullest extent permitted by law. Judgment on any award may be entered and enforced in any court of competent jurisdiction.

**V. Other Matters**

A. *Confidentiality.* All aspects of Phase I and Phase II, including any award made, shall be confidential to the maximum extent permitted by law, except to the extent that disclosure is required by applicable professional standards or is necessary in a later proceeding between the parties.

B. *At-Will Employment.* The Program does not change the at-will status of employees and does not create any contract between you and the Firm, other than as to those matters expressly addressed in the Program.

C. *Notice.* Any notice required to be given to you shall be directed to your last known address and email address as reflected in the records of the Firm or, if you are represented by a lawyer, your legal representative. Any notice required to be given to the Firm shall be directed to the General Counsel's Office at the Firm's principal location in New York City, to the attention of Andrea Stempel, Associate General Counsel, or her successor or designee.

D. *Administrative Process.*

1. The Program does not affect your right to file a charge with, make a complaint to, participate in an investigation by or bring any matter to the attention of ("File a Charge") the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, a state or local discrimination agency, or any other administrative body, although you waive the right to file or pursue any lawsuit or court action against the Firm as set forth in this Program.

2. Notwithstanding the Filing of a Charge, you may seek monetary relief only with respect to a Covered Dispute through the Program, except as otherwise required by applicable law with respect to administrative charges.

E. *Termination or Amendment.*

1. The Firm may propose termination or amendment of the Program by providing electronic notice to you, including by posting changes on the Firm's intranet or through MyPeopleLink (or any system that replaces it). You indicate your agreement to the proposed amendment or termination, and such proposed change becomes effective as to you, by commencing employment or, if currently employed, continuing your employment with the Firm for a period of 30 days after notice is provided.

2. Termination or amendment will not affect a Covered Dispute as to which either Phase I or Phase II had already been initiated when the termination or amendment was proposed.

3. If a proposed termination or amendment is determined not to be effective in whole or part for any reason, including lack of sufficient notice, lack of agreement, invalidity of a Program provision or otherwise, the Program as it existed at the time of the proposed termination or amendment shall remain in effect to the extent that the proposed termination or amendment is determined not to be effective.

F. *Due Process and Severability.*

1. The Program is intended to be fair to both sides and to provide you with access at an affordable cost. If it is determined that all or part of the Program is unenforceable for reasons pertaining to the fairness of the procedures or the cost, the Firm shall have the option to modify the Program as appropriate to address the concern.

2. If any portion of the Program is held to be invalid or unenforceable, or if any portion of the Program would, if effective, violate applicable law, that portion of the program shall be void and of no effect, but the remainder of the Program shall remain in full force and effect.

G. *Choice of Law Governing Program.* The Program is formed and enforceable under Delaware law without regard to its conflicts of laws principles. The Program, these procedures and any arbitration award that may result from them shall be governed by the Federal Arbitration Act ("FAA"). However, if the FAA is held not to apply for any reason, the Program, these procedures and any arbitration award shall be governed by the Delaware Uniform Arbitration Act, including judicial interpretations.

© 2020 Ernst & Young LLP All Rights Reserved. No part of this document may be reproduced, transmitted or otherwise distributed in any form or by any means without written permission from the copyright owner.

# Ex. 10

**From:  Cecilia Culver**
**Subject:** Initiation of Phase I Mediation under the EY Common Ground Dispute Resolution Program
**Date:** May 22, 2025 at 4:43 PM
**To:** Andrea.Stempel@ey.com

Ms. Stempel,

Please see the attached. I am initiating Phase I Mediation under the EY Common Ground Dispute Resolution Program (Score No. 08363-201US).

Cecilia Culver (she/her/hers)

| | | | |
|---|---|---|---|
| **Administrative Leave Communication.pdf** |  | **EY Complaint - Culver - 5.22.25 .pdf**<br>98 KB |  |

May 22, 2025

*Via Certified Mail & Email*
Andrea H. Stempel
Associate General Counsel, Head of Employment Law
Ernst & Young LLP
5 Times Square, 36th Floor New York, NY 10036
Email: Andrea.Stempel@ey.com

  Re: Initiation of Phase I Mediation Under EY Common Ground Dispute Resolution
  Program (Score No. 08363-201US)

Dear Ms. Stempel:

Pursuant to Section III.C of the EY Common Ground Dispute Resolution Program, this letter serves as formal notice to initiate Phase I Mediation on my behalf (Employee ID: 20230027135, Office: 1101 New York Ave NW, Washington DC 20005).

I am claiming:
  1. Retaliation under Title VII of the Civil Rights Act and the DCHRA anti-discrimination laws, arising from protected speech at the George Washington University Columbian College of Arts and Sciences graduation ceremony on May 17, 2025.
  2. Wrongful administrative leave imposed on May 18, 2025, in violation of EY policies and procedural fairness standards.
  3. Breach of contract for failure to adhere to EY's internal policies on disciplinary investigations.

I gave a graduation speech where I addressed matters of public concern, including institutional accountability and ethical governance. No EY policies restricting off-duty speech were provided to me.

Within 24 hours of my speech, on a Sunday, I was placed on administrative leave without written justification, barred from client contact, and denied access to systems/premises.

EY has refused to disclose the terms of my leave, relevant policies, or specific allegations, despite repeated requests (see emails dated May 18–22, 2025).

The persons involved are Tony Jordan (Americas Chief Ethics & Compliance Officer), Tim

Henseler (Ethics & Compliance Team), Jason Morrissey (Deputy Talent Leader), and Andrew Phillips (Partner in QUEST Team).

I request immediate reinstatement to my position with full privileges, expungement of all disciplinary records related to this matter, compensatory damages for reputational and professional harm, and revision of EY policies to clarify protections for employee speech and investigatory transparency.

Please provide me with the following:
1. Written terms of administrative leave (pay status, duration, restrictions).
2. Copies of all policies cited as grounds for disciplinary action.
3. Complaints, reports, or evidence supporting the leave decision.
4. Communications between EY personnel referencing my speech or leave.

I select the JAMS to administer Phase I. Per Section III.B, EY must confirm or propose an alternative provider within 10 days.

Please confirm receipt of this notice by May 25, 2025, provide the requested documents by May 30, 2025, and schedule mediation on June 18 via Zoom.

Sincerely,

**Cecilia Culver** (she/her/hers)

# Ex. 11

Case 1:26-cv-01290-CKK   Document 27-1   Filed 08/10/26   Page 58 of 71

 ceciliarculver@gmail.com | Sign Out | ?

# Separation Notification

 Reply All ∨

**Jason P Morrissey** <jason.morrissey@ey.com>
5/23/2025 12:55:22 AM

To: ceciliarculver@gmail.com  ≫

ℹ Do Not Forward: Recipients can't forward, print, or copy content.

Cecilia,

Last weekend, you delivered a speech at the George Washington University (GW) commencement ceremony. EY placed you on paid administrative leave on Sunday, May 18, 2025, while it reviewed your actions. Thereafter, you were provided with two opportunities to speak with Firm leaders. Your responses to their outreach were not immediately cooperative or productive to having a discussion.

EY has, in the interim, confirmed that you prepared, submitted, and recited in rehearsal very different remarks than those you delivered at the graduation ceremony. In doing so, your behavior was determined to be inappropriate, dishonest, and deceitful. Also, your conduct reflected upon you and our firm since your profile in the GW commencement program specifically identified you as a current employee of EY.

Your actions in substituting your speech at the GW commencement ceremony violated the EY Global Code of Conduct (the Code). Pursuant to the Code, our personnel commit to behave according to the principles contained in the Code, one of which is integrity. Your actions did not reflect professional integrity on your part and, as an employee of EY, compromised the integrity and reputation of EY by association.

Based on your actions and poor judgment, the Firm lacks confidence that you will comport yourself consistent with the tenets of the EY Global Code of Conduct and Firm policies. As such, your employment is being terminated for Cause effective today, May 22, 2025.

You will be paid through your termination date, and your final pay will be direct deposited into your account by end of the day on May 23, 2025. Also, you will be receiving a termination letter and other information pertaining to your separation from EY.

Regards,

Jason Morrissey

 **Jason P Morrissey, SHRM-SCP, SPHR |** Director, Deputy Talent Leader-Tax | Talent Team

Ernst & Young LLP
1828 Walnut Street, Suite 04-100, Kansas City, Missouri, 64108, United

# Ex. 12

**Immediate Action Required: Exit Package for Culver, Cecilia, GUI: 3568322**

**Regina L Oberg** <Regina.Oberg@ey.com>　　　　　　　　　　　　　　　　　Fri, May 23, 2025 at 10
To: "ceciliarculver@gmail.com"
Cc: Jason P Morrissey <jason.morrissey@ey.com>



**US Talent Shared Services**
Separations

Dear Cecilia,

As discussed, below are the actions to complete.

If you have questions during th
process, contact:

**US Talent Customer Supp**

Email:
ssc.customersupport@ey.com

Phone:
1-800-394-3573 (1-800-EYHelp
Option 2,1

Hours:
Monday - Friday | 8AM - 6PM C

| Action | Review | Documentation | Due |
|---|---|---|---|
| 1 | Separation Letter | | For your reference only, no further action needed |

| Action | Review, sign and return | Documentation | Additional Information | Due |
|---|---|---|---|---|
| 2 | Required Actions and Acknowledgements | | Sign and return to ssc.recordsmanagement@ey.com | by your last day worked |
| | Managing Confidential Data Checklist | | | |

**Will Receive**

| Action | Return Laptop | | Due |
|---|---|---|---|
| 3 | On your last day worked and after you've received the mailing box, place your laptop, peripherals and badge in the box, affix provided label and drop at the nearest UPS location. | **Additional Information** | You are required to return all EY assets. This includes your laptop, which should be returned on the last day of your employment. The laptop is the property of EY. Not returning your laptop will be considered unlawful possession. If you have more than one EY laptop in your possession, all of them should be returned by the last day of your employment. EY Technology will delete all the data in the laptop after it is returned. The laptop will be remotely locked if it is not returned and will be useless as a computing device as a result. Therefore, there is no reason to retain the laptop. (upon receipt of mailing box) |
| | If applicable, work with your Engagement Partner to return all physical client issued passes, keys, electronics, etc. If a prepaid shipping label is required, please submit a form utilizing the provided link, as client issued equipment should not be returned to EY's US Central Depot. | Technology Return Shipping Requests | For laptops with no indication of an attempted return, EY may file a police report. Failure to act suggests your failure to cooperate and may provide EY additional cause to contact law enforcement. If any of the laptops assigned to you are lost or stolen and you have not notified EY yet, immediately contact the EY Helpdesk and file an incident report. If you have questions about the laptop return process, please contact OSTS US Laptop Shipping. (by your last day worked) |
| | Work with your Location Contact on arrangements to retrieve any personal items stored in the office to be mailed to your home address on file in SuccessFactors. | EY Location Card | by your last day worked |

**Will Receive**

| Action | Complete Additional Activities | Documentation | Due |
|---|---|---|---|
| 4 | Review SuccessFactors and make necessary updates to your home/mailing address, personal email and phone number. This is critical to ensuring that you receive necessary firm materials (e.g. your W2). | | How to Guide: Personal Information Change — by your last day worked |
| 5 | Review attached 'Recommended Actions and Resources' and complete as appropriate. | | by your last day worked |

Thank you for completing the required actions in a timely manner.



**US Talent Shared Services - Separations**

Office: 1-800-EY HELP3 (394-3573), Option 2 |
E-Fax: 1-866-610-3086 | ssc.separations@ey.com

Website: http://www.ey.com/

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.



The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail addre opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

**4 attachments**

**Required Actions and Acknowledgements_Inv.docx**
49K

**Managing Confidential Data_Inv.docx**
44K

**Recommended Action Items and Resources_ Inv.docx**
1505K

**Culver, Cecilia, GUI 3568322.pdf**
116K

# Ex. 13



**From:** **Andrea H Stempel** Andrea.Stempel@ey.com
**Subject:** RE: Initiation of Phase I Mediation under the EY Common Ground Dispute Resolution Program
**Date:** May 25, 2025 at 4:03 PM
**To:** Cecilia Culver

I am acknowledging receipt of the below with attachments.  Kindly advise whether you are represented by counsel in connection with this matter and if so, please provide your attorney's contact information.
Thank you



**Andrea H. Stempel** | Associate General Counsel |
Head of Employment Law

Ernst & Young LLP
One Manhattan West, New York, NY 10001
Office: +1 212 773 0670 | andrea.stempel@ey.com
Website: http://www.ey.com
Assistant: Norma Simmons |  +1 212 773 2344 | norma.simmons@ey.com

**From:** Cecilia Culver <ceciliarculver@gmail.com>
**Sent:** Thursday, May 22, 2025 4:43 PM
**To:** Andrea H Stempel <Andrea.Stempel@ey.com>
**Subject:** Initiation of Phase I Mediation under the EY Common Ground Dispute Resolution Program

You don't often get email from ceciliarculver@gmail.com. Learn why this is important
Ms. Stempel,

Please see the attached. I am initiating Phase I Mediation under the EY Common Ground Dispute Resolution Program (Score No. 08363-201US).

**Cecilia Culver** (she/her/hers)

Any tax advice in this e-mail should be considered in the context of the tax services we are providing to you. Preliminary tax advice should not be relied upon and may be insufficient for penalty protection.

The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.

Notice required by law: This e-mail may constitute an advertisement or solicitation under U.S. law, if its primary purpose is to advertise or promote a commercial product or service. You may choose not to receive advertising and promotional messages from Ernst & Young LLP (except for My EY, which tracks e-mail preferences through a separate process) at this e-mail address by opting out of emails through EY's Email Preference Center. Our principal postal address is One Manhattan West, New York, NY 10001. Thank you. Ernst & Young LLP

# Ex. 14

# E-File for Attorneys Information

**EEOC Charge Number: 570-2026-00478**
**Date: 11/18/2025**

**Unverified Path**

Receiving Office: Washington Field Office

## Attorney Information

Name: Abdel-Rahman Hamed Esq.
Pronouns:
Address: P.O. Box 25085
Washington, DC 20027
Email Address: abdelrahman@hamedlaw.com
Primary Phone: 202-888-8846
Secondary Phone:
Fax:

Language Needs:
Disability Needs:

Bar Number: 5575352
Bar Jurisdiction: New York

## Client Information

Name: Miss Cecilia Culver
Pronouns:
Address:

Email Address: ceciliarculver@gmail.com
Primary Phone:
Secondary Phone:

Date of Birth:
Gender:  Female
Disability: No
Hispanic or Latino: No
Race: White
Ethnicity/National Origin Group: European Origin Group
Ethnicity/National Origin: English Origin

Language Needs:
Disability Needs:

## Respondent Information

Name: Ernst & Young LLP
Address: 1101 New York Ave NW
Washington, DC 20005, UNITED STATES OF AMERICA
Primary Phone: 212-773-4182
Fax:

Number of Employees: 501+ Employees

North American Industry Classification System (NAICS) Code: 541211
Tax Identification Number: 34-6565596

Service Address: Email Address : Lisa.Swanson@ey.com

## Allegation Information

Allegations: Color, National Origin, Race, Religion, Retaliation

Particulars: On May 17, 2025, Claimant delivered a graduation speech at George Washington University's commencement ceremony. In her speech, she called for an end to the genocide in Gaza, highlighting the catastrophic human rights violations. Claimant also called for divestment from the Apartheid regime unlawfully occupying Palestine and oppose corporations enabling the occupation, Apartheid, and genocide in Palestine.

Claimant's speech constituted protected activity under Title VII, addressing civil rights violations and discrimination affecting individuals based on color, national origin (Palestinian), race (Arab), and religion (Islam) all protected categories under federal anti-discrimination law.

Within 24 hours, on May 18, 2025, Respondent Ernst & Young LLP placed Claimant on administrative leave in direct retaliation for the protected speech, without identifying specific policy violations or providing due process. On May 22, 2025, Respondent terminated Claimant's employment based on false accusations that she intentionally submitted different remarks than delivered and violated the Code of Conduct pretextual reasons designed to conceal unlawful discrimination and retaliation.

Respondent's stated reasons are demonstrably false; Claimant delivered substantially the same speech she had prepared and submitted for approval. Claimant's termination was discriminatory and retaliatory based on: (1) the color of the Palestinians and Arabs she advocated for; (2) her advocacy for individuals of Palestinian and Arab national origin; (3) her advocacy for individuals of Arab race; (4) her advocacy for Muslims and Muslim-majority communities; and (5) her engagement in protected activity opposing discrimination and advocating for civil rights of protected groups.

The extraordinarily rapid termination timeline (5 days from speech to termination), complete absence of investigation, and predetermined decision demonstrate that Respondent's stated reasons are pretext for unlawful discrimination and retaliation. Respondent has not subjected other employees to similar swift termination for comparable public speech on other controversial topics, revealing discriminatory and retaliatory intent.

This retaliation is ongoing, as Claimant remains terminated and continues to suffer harm to her career, reputation, and financial security. Respondent's conduct violates Title VII based on color, national origin, race, religion, and retaliation for protected activity opposing discrimination.

## Additional Information

Class: I dont know

Policy: I dont know

Related Inquiries/Charge: Yes
570-2026-00477

Related Lawsuit: No

Requested Mediation: Yes

# Ex. 15



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C.  20507
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Washington Direct Dial:  (202) 921-2970
FAX (202) 827-2349
Website:  www.eeoc.gov

January 2, 2026

Abdel- Rahman Hamed
P.O. Box 25085
Washington DC 20027

REF: Charge Number:  570-2026-00478
Ceclia Culver v. Ernst & Young

Dear Mr. Hamed;

I have had the opportunity to review the charge referenced above alleging unlawful workplace discrimination.

The information does not demonstrate that charging party engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, when she spoke publicly about human rights violations in foreign countries. Therefore, the charge does not appear to establish a prima facie case for retaliation. The information does not indicate that there was a similarly situated employee outside of the charging party's protected class who was treated better. Therefore, it appears there is insufficient evidence to establish that the termination was based on her national origin, race, color or religion.

This is your opportunity to provide evidence or additional information contrary to the above assessment. If you have additional information of this nature, please provide it within 5 days of this letter. Thereafter, a determination will be made based on the available information. If the investigation is closed at that time, a Notice of Right to Sue will be issued, which will allow the charging party to file a private suit in federal court within 90 days of the Notice.

Sincerely,

*Elizabeth Cononie*

Elizabeth Cononie
Supervisory Equal Opportunity Investigator
Washington Field Office
Direct Line: 202-921-2782
Email: elizabeth.cononie@eeoc.gov

# Ex. 16


Case Closed

Charges you file with EEOC are available for you to review for up to 90 days after they are closed. Charge 570-2026-00478 has been closed for more than 90 days, and information about it is no longer available in the CP Portal. To obtain copies of your charge files, you may submit a Freedom of Information Act (FOIA) request or Section 83 request, or contact the Washington Field Office at (800) 669-4000.

Back